My name is Stephanie Adraktis and I represent the petitioner David Falcone. Mr. Falcone was convicted of first-degree murder in a trial where his counsel was prejudicially ineffective in three ways. The first error was his failure to move prior to trial to suppress Mr. Falcone's custodial statements. Secondly, he failed to introduce at the mid-trial suppression hearing tape recordings that would have impeached the police officer testimony that they had stopped questioning Mr. Falcone after he asked for a lawyer and that they'd honored his invocation of his right to counsel. The tapes would have also impeached the officer testimony about the substance of Mr. Falcone's testimony, that he had said that he was present at the scene of the crime and that his brother had pulled the trigger because his statements on the recordings included a statement, I was framed, and also he's not my brother. And the final error was the attorney's failure to impeach the police officer's false testimony that Falcone had not disclosed his alibi witness and another witness until the day before trial. In fact, trial counsel had in his own file the police chronological record of its investigation which included notes that the alibi witness had been disclosed in November 2004, about a year before the October 2005 trial. These combined errors ensured a conviction at this trial because they unfairly discredited Mr. Falcone's alibi. The prosecutor took advantage... As to the statements to the police, they didn't introduce the first two statements. They introduced the statement by Ramos at the booking and the third trial, neither of which were transcribed, so it's very hard to put together whatever complaints you have about the first two interrogations or non-interrogations because they didn't introduce them. So, I had a very hard time understanding how it all hooked together. Yes, Your Honor, it was confusing even during the hearing, there had to be some correction by the police about exactly the sequence of events during the process, but the case law emphasizes, Edwards and Miranda itself, that the interrogation should be viewed as a totality and this one was a continuous process. First Mr. Falcone was brought into the interrogation room, he was advised of his rights, he asked for a lawyer, then the police continued to interrogate him, they urged him to call them at the jail, they misled him about whether or not he could have a lawyer during the interrogation and told him he couldn't have one until after he was arraigned, they made other statements and continued and also interrogated him about his alleged gang ties. So they violated his rights at the very beginning of the interrogation process and the case court's decision in Colosso v. Estelle discusses this, that that initial violation of Mr. Falcone's rights is important because it must be corrected before any of the subsequent statements can be admitted. The statements that were allegedly volunteered and spontaneous during the booking process were made almost immediately after the violation of his right to counsel and so this was a continuous process where those purportedly spontaneous statements were actually the product of the illegality that occurred when the police lied to him about when he could get a lawyer and also did not honor his invocation of his right to counsel. The process was this... Weren't these three separate interviews that occurred at different times? They were, from what we can tell from the record, this all happened in one short sequence of time. The police tried to interrogate him, he asked a couple times for a lawyer, they didn't honor his invocation, they then took him purportedly downstairs for booking, Mr. Falcone told the booking officer, I'm really stressed out, I'm really nervous, what do I do? The booking officer said, did you talk to the detectives? Now that clearly by the booking officer is not a booking question, it's an invitation for Mr. Falcone to go back and talk to the detectives and what that demonstrated was that this was a continuous process that the police officers were, including the booking officers, acting as a team to extract these statements from Mr. Falcone. This wasn't a separate incident at the booking area where Mr. Falcone just spontaneously and on his own made the statement, he made it in response to the questioning by Officer Ramos. I have a question here, I have a question, what's your best case that you're depending upon to show that this was a continuous interrogation that was illegal from the start, including the booking? Yes, your honor, this court's decision in Colosso v. Estelle provides an analytical framework for a situation like this where a person is interrogated, their rights are violated and then they purportedly made a voluntary statement later and the framework requires the court to look at whether the process that resulted in the statement, was it a continuous process or was there a break in the stream of events and here there was no break. It was essentially four police officers, there were two detectives, two booking officers and in fact another officer, Baker, who joined in on this, were all working as a team during this entire interrogation process. They tried to interrogate him, they took him downstairs, they took him back to the detectives, then they took him back to booking and then they took him back to the detectives again. There was no break in this process at all, so the Colosso opinion supports our argument that this was a continuous interrogation process. There was also no change in the people involved, the detective who was the lead, Detective that all took place in a continuous sequence and there was nothing to break the effect of the original illegality. The police officers and the detectives didn't even claim that they re-advised Mr. Falcone of his Miranda rights and elicited a waiver at any time during any of the interrogations after the first violation of his Miranda rights. Edwards doesn't require that if the later interrogations were voluntary, so your argument depends on the connection between the interrogations, right, if it was in fact a separate voluntary interrogation, then you wouldn't need a separate Miranda advisement, is that right? Oregon v. Bradshaw directly addresses that issue. Under Edwards, the court held that a person, once they've invoked, can make a voluntary statement later, but the Bradshaw opinion emphasizes that the later process is a two-step process. In other words, you don't just say, well, he volunteered to talk to us after he asked for a lawyer. The police are required to show that after the suspect re-initiates the conversation that they advised the suspect of his or her Miranda rights and that they elicited a waiver, and those opinions emphasize that there are special safeguards in a situation like this where a person has already invoked their right to counsel. This isn't like a case where the person has not indicated any reluctance to talk to the If I may, your briefs were sadly deficient in all of this, and it was very difficult to understand from the briefs what you were arguing about the connection, so why we're having to struggle with it now, so this was all kind of not there in the original briefs, and I sort of don't know what to make of that. Well, your honor, because the trial court never litigated this issue, and our argument is that trial counsel was ineffective for failing to introduce the evidence at the hearing that would have allowed the trial court to even make a decision on this question, the trial court never addressed it, the court of appeal didn't address it, and the district court didn't address it, so essentially, we didn't have... But the state trial court did address it, right? The state trial court found that the police had honored Mr. Falcone's initial invocation of his right to counsel and its entire opinion, that of the trial court and the court of appeal rested on that basis, they found that there wasn't any violation of his invocation of his right to counsel, and that's where the issue... That's how the issue was presented below, it was not litigated whether or not the subsequent statements to Officer Ramos were admissible as spontaneous, because the court found that there was no Miranda error to begin with, and that's why these tape recordings were so crucial to Mr. Falcone's suppression hearing, because if trial counsel had introduced those tape recordings, the trial court would have been forced to acknowledge that the police did not, in fact, honor his right to counsel, they didn't stop questioning him, they in fact... What's the thing to question him about, the gang question, was that basically it? The gang question, and in addition, the fact that they continued to speak with him, the transcript shows that instead of saying, okay, you want an attorney we can't speak to anymore, they just switched to other subjects and began talking to him about things like... Well, they asked if there were booking questions, but they weren't actually booking him. Exactly, your honor, it comes across as a pretext to keep talking to him, even though he's asked for a lawyer, because clearly these are the detectives, and it's not their job to book him, but they start asking him about his medical issues, they ask him to take things out of his shoe, and then they start moving into more substantive questions about are you a gang member, things like that, they're still questioning him and they're not honoring his invocation of his right to counsel, and that's why... Can you talk about the alibi? Yes, your honor, the counsel's failure to impeach the detective's testimony that he was never told about Mr. Falcone's alibi was also devastating to his defense, the prosecutor in his closing argument throughout both his initial closing argument and his rebuttal argument said things like the alibi witness never once came forward, she never said anything about having been with Mr. Falcone on the day of the charged incident until the day before trial, and he returned to this theme again and again, saying that, well, if you believed this alibi, you should have quit him, but you shouldn't believe it because she's a liar, she just sat there during this entire year that this case was pending and never told anybody that she was with Mr. Falcone during the shooting, and that was absolutely false, and defense counsel could have presented evidence from the detective's own file that the defense attorney's paralegal, who could have also testified, had personally told the detectives about the alibi witness and that they had that information a year before trial. I mean, apparently the strongest testimony would have been from the paralegal on it, but the chief reporter, the chief reporter, I'm not sure which, concluded that he wouldn't have testified. Does that make sense? Your honor, it really didn't make sense because at the time of trial, the paralegal was working for defense counsel. If he had been reluctant to give a declaration after trial, there was an obvious conflict between his interests and that of his employer because there would have been the allegation of ineffective assistance of counsel, and that wouldn't have been a consideration at the time of trial, so there was no reason to not call him, and in fact, the district attorney in his closing argument made much of the fact that defense counsel didn't call his own staff to tell the jury that any one of them had disclosed the alibi to the police, and so the sum total of these errors, the false impeachment of the alibi witness, the failure to make a motion to exclude the statements prior to trial, and the failure to competently litigate the admissibility of the statements was prejudicial, and for the reasons explained in the brief, the de novo standard of review should apply because of the court of appeals unreasonable determinations of fact. I have a question. I have a question. I wanted to know how much of these statements that were made that you claim were illegally taken were introduced in that trial in chief? Your Honor, there were two statements that were introduced in rebuttal. None of the statements were introduced in the prosecutor's case in chief. He waited until the rebuttal, and then he introduced testimony of Officer Ramos and testimony of Detective Myers. Both of them. Yes. Okay. Was there another question? Go ahead. I'm sorry. Ultimately, can you show prejudice here? It seems like the evidence was pretty strong here. You had two of the people who were at the murder scene identify him, and then he led the police to the murder weapon, the gun, in his house, in the closet. Isn't that pretty overwhelming evidence? Even if you talk about the potential evidence that was excluded or not included, how do you show prejudice here? Your Honor, the prosecutor himself told the jury, if you believe this alibi, you've got to acquit Mr. Falcone, and he was essentially conceding that the evidence of identification was equivocal. The witness, Mr. Carroll, who testified at the preliminary hearing, didn't testify at trial, and the only identification that he had made was in a pretrial photo lineup. And then the witness who did testify at trial had been equivocal in her statements throughout the investigation. At one point, she identified Mr. Falcone's brother and thought it was the same person that she had identified earlier as the shooter. So she wasn't quite 100% clear in her identification. And the record also shows that she ran away from the incident when it first started to turn violent. She went for help and tried to call someone. So she wasn't present during the entire incident and during the actual shooting. And as to the gun, the evidence shows that when the police came to Mr. Falcone's house, he was the one that showed them where it was. He told them it's in the closet. And his statement later apparently was that a person, I'm sorry, not his statement, but a person who lived at the house testified that another individual named Joker had brought a package to the house with a gun in it and that she had hidden it. So there was not a direct connection. It's not that she's hidden it in the closet. She's hidden it under the porch. So I understand the whole story, how that hooks up with the gun in the closet. Yes, Your Honor, there wasn't an explanation for how the gun was moved from under the porch to the closet. And there was an indication in the record, several comments by different people, that the witness who gave that testimony had a disability, some sort of mental disability. It was never expanded upon beyond that. But apparently she was somewhat developmentally delayed. So it wasn't entirely clear what had happened with her. But the evidence was not conclusive in the identification of Mr. Falcone. And also there was an alibi witness in addition to Mr. Falcone's girlfriend. There was an alibi witness who was not related to him, was not biased in his favor, who testified that Mr. Falcone was at the girlfriend's house around the time of the charged incident. So his alibi was equally strong as the evidence against him. And the prosecutor essentially admitted that in his closing argument. If you believe the alibi, you've got to find him not guilty. Okay, thank you very much for your time. I'll give you a minute in rebuttal. Mr. Dominguez. Thank you, Your Honor. I'm going to leave the court. Carlos Dominguez on behalf of the Attorney General. Before I begin, I just want to make clear the situation that counsel was in. He was faced with a difficult case, leaving him few options. The prosecution established Petitioner's role in the shooting with two eyewitness identifications. The murder weapon, like the court indicated, was found in Petitioner's closet. And when the police approached him, Petitioner fled. Once in custody, Petitioner admitted to the police that he was present at the scene of the shooting, but that he wasn't the shooter. Faced with this evidence, counsel presented an alibi defense supported by several witnesses as an alternative theory. Now, I'd like to first focus on the Miranda claim, because that's, I think, you know, it relates to the alibi claim. But I want to make clear the two statements that were admitted in this case were properly admitted. One, as spontaneous statements made to the booking officer. And the second statement to Detective Myers was properly admitted once he re-initiated the interview process with the detective. As far as the spontaneous statement, that statement was made... How come it wasn't that spontaneous? I mean, there was a response to the question, did you talk to the police, right? Well, the booking process was going to begin with Officer Ramos, and it was Petitioner who initiated the conversation. He was nervous, he asked Officer Ramos, you know, what should I do? And Officer Ramos asked him, have you talked to the detectives? And we... The court has to look at that question and see if that was designed to elicit an incriminating statement. That question, in itself, was neutral in nature. It didn't ask Petitioner anything about the crime. Petitioner was the one who initiated the conversation. And Officer Ramos didn't ask any follow-up questions or, you know, ask any details about Petitioner's statement. That statement was properly admitted as spontaneous and that's why it came in. On that statement, according to Officer Ramos, I was there, but it was my brother who did it? Was that the story you mean? What's that, Your Honor? I'm sorry. What was the statement exactly? It was the same statement that he made later. It wasn't, you know, with as much detail, but it was, I was there, but it was, you know, it was my brother who did the shooting, yes. And the second statement, both of these statements were introduced at trial and the second statement to Detective Myers was made after he, again, re-initiated the interviewing process. Like the court indicated, there was no obligation, again, to re-advise Petitioner of the Miranda Waivers. He had just been advised earlier of his Miranda rights. That's the question and it hasn't really been briefed. I mean, under what, or put another way, I understand your opponent's argument to be that, no, he had already invoked his right to attorney and was part of the same, at least the third interview, was part of the same set of interrogations whether he asked to come or not and that they should have at least re-Miranda-ized him before. And I don't think... I agree with you. That's the problem. I don't think it was raised in the opening brief and I tried to raise why the statements that were admitted, why they were properly admitted. I think the transcripts support the finding that these were all separate interviews. Of course, the booking interview was not an interview that was booking. There was no per se... But if you actually look objectively at the first two transcripts, you'd keep talking to him about... I mean, there were supposedly booking questions. They weren't booking him, so why were they talking to him? And moreover, some of them weren't booking questions like, were you in a gang? So, it seems to me that they did keep talking to him when they shouldn't have. That's number one. And number two is that there were definite inaccuracies as to what was found to have happened because most obviously to me, they say that they kept insisting at the trial, at the suppression hearing, that he had whispered this thing about his brother after the first interrogation, but the second one itself demonstrates that that wasn't true. It was before the second one, if he said it at all. And then he said, it wasn't my brother. Let me deal with the first one and then we can talk about that it was my brother. I think the record, if we read the first transcripts, the record reflects that after he invoked his right to counsel and the detective said fair enough, that'll be it. I gotta fill out some paperwork. They stopped asking him questions. It was petitioner who was asking questions. What am I charged with? I don't know if he died. Those kind of questions. As far as the booking questions themselves, they were all booking questions except for that gang membership. But they weren't booking him. I can't speak to the police procedures at the time or what happened, but the gang membership question, if you look at the case in the petitioner's site, and this is California Supreme Court law, this is state court law, if you keep reading after that site, it says and I want to quote, to be clear it is critical to ask arrestees about gang affiliation during the booking process. Jail officials have an important institutional interest to minimize potential violence. We simply hold that and I'm gonna paraphrase, the answers are not admissible in the prosecution's case in chief. And this wasn't a gang case. It wasn't charged as a gang case. They properly asked him the questions and any answers as far as whether he was in a gang or not were not admitted at trial. Any of those questions I think are not relevant to the issue. I think the first answer does show that it was the conversation. He was the one asking the question and the detectives were answering those questions. As far as the second issue and if you can clarify, your honor I think you're talking about the it was my brother statement. Right, and the person who testified at trial insisted that it was right after the first interrogation, but in fact the second one the detective says now you whispered it was your family. You were lying when you told me right now before you came in the room that it was your brother and you were lying. So that doesn't hook up to what was testified to. If you read the suppression testimony by Detective Myers and the prosecutor clarifies this point to the court, is Detective Myers testified that petitioner whispered it was my brother. The prosecutor makes the point that it's very hard to hear and I think the court of appeal and the district court both mentioned this. It was very hard to hear so chances are you're not going to get it in a transcript and we don't see it, but we know that's because in that second transcript the detective asked petitioner now you whispered it was your family. Just now. And then he says he's not my brother. He's not your brother. And I think then the court has to ask whether it was the statement it was my brother made at the end of the first interview or at the start of this one if that is going to materially impeach the testimony of the detective. What about the alibi? I can tell you what troubled me was his insistence it was over and over and over again in the closing arguments both of them. No connection to Mr. Falcone other than the fact that he lived in the same building as Mr. Falcone's girlfriend and in fact if anything the witness was biased against Mr. Falcone because as he testified he was frequently annoyed by Mr. Falcone's presence at the building that he felt like he would dispose of trash in the common area and so that was a problem it was really hard to figure out how he could go up there about a particular one day and and known at a certain time and known that they were there. He testified that he was waiting that day for a disability check and that he also knew which day it was because he had and also what time it was because he kept to a very strict routine when he went to the restroom in relation to when he took his medication so he did explain why he was in particular aware of that date and also keeping in mind that the alibi witness did come forward quite early in this case we know from the dates and the police notes that it was November 4th when it was disclosed to them so they must have identified this witness much earlier and it would have been much easier for him to reconstruct what he did that day so early in time I agree if you're going to ask someone a year later what they were doing on September 17th they couldn't accurately relate that but in this case the investigation was done early and the witnesses were identified early I believe I'm out of time I'm curious one more question in the final optical record notes 11-4 spoke with paralegal for Larry Young, attorney for Falcon, advised of possible alibi then to see notes but we don't have any notes I'm sorry your honor I didn't hear the last after that notation it says see notes yes your honor we don't I don't have it in my record those referenced notes so it looks like there were separate notes but those were not included in the record I don't know if the court is familiar with this part of the litigation of this case but there was an extensive litigation by Mr. Falcon against the lawyer who was initially retained to file his federal habeas petition and who had the entire file and it was never Mr. Falcon was never able to obtain it from him and so we don't have the entire record your time is up thank you very much Falcon v. McDowell was submitted and we'll go to the last case Audia Rahi Rueda Vidal v. DHS
judges: Siler, Berzon, Lee